IN THE UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH CAROLINA

CHARLESTON DIVISION

| | |
|---|---|
| Edward M. Kramer, ) | CIVIL ACTION NO. 2:14-3546-PMD-BM |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | **REPORT AND RECOMMENDATION** |
| ) | |
| Omnicare Esc LLC, ) | |
| ) | |
| Defendant. ) | |
| ) | |

This action was originally filed in the South Carolina Court of Common Pleas, Ninth Judicial Circuit, and was subsequently removed to this Court by the Defendant on the basis of complete diversity of citizenship between the parties. 28 U.S.C. § 1332. Plaintiff, a former employee of the Defendant, alleges a single cause of action for wrongful termination/breach of contract.

The Defendant filed a motion to dismiss pursuant to Rule 12, Fed.R.Civ.P., on November 5, 2014. Plaintiff filed a memorandum in opposition to the Defendant's motion on November 24, 2014, following which the Defendant filed a reply memorandum on December 4, 2014. Defendant's motion is now before the Court for disposition.[1]

---

[1]This case was automatically referred to the undersigned United States Magistrate Judge for
(continued...)

1



**Allegations of the Complaint**

Plaintiff, alleges that he was hired by the Defendant as a part-time staff pharmacist on or about June 3, 2009. Plaintiff alleges that his immediate supervisor was Larry "Brian" Grant. Plaintiff alleges that on or about August 27, 2012, an on-call pharmacist technician (Jasen Nelepovitz) stated to Grant, while referring to the Plaintiff, that Plaintiff "takes Hospice to make an extra $10 . . . that's a Jew for you". Plaintiff further alleges that Grant had stated to Nelepovitz that he had hired a female pharmacist over an Indian-American applicant because she was better looking, and that he preferred to hire younger, less seasoned pharmacists as he could "mold" them. Plaintiff further alleges that throughout the course of his employment, he made "numerous complaints" to management about Grant making "derogatory comments based on religion, sex and age", but that the Defendant never took any remedial action. Finally, Plaintiff alleges that on or about October 9, 2012, he was "wrongfully terminated" by the Defendant for allegedly being rude to another client, which was a "pretextural and false" reason for his termination as the alleged rude statement was actually made by another employee of the Defendant's, not the Plaintiff.

Plaintiff alleges that at the time of his wrongful termination he had been promoted from part-time to full-time, that he was sixty-five (65) years of age (at the time of his termination), and was a member of the Jewish faith. Plaintiff alleges that he had a "valid, binding (employment) contract" with the Defendant at the time of his termination, that he had complied with all terms and conditions of said contract, and that the Defendant breached his employment contract when it

---

[1](...continued)
all pretrial proceedings pursuant to the provisions of 28 U.S.C. § 636(b)(1)(A) and (B) and Local Rule 73.02(B)(2)(g), D.S.C. The Defendant has filed a motion to dismiss. As this is a dispositive motion, this Report and Recommendation is entered for review by the Court.



wrongfully terminated him due to his age and religion in violation of Title VII of the Civil Rights Act and the Age Discrimination in Employment Act (ADEA).[2] Plaintiff seeks monetary damages. See generally, Complaint.

### Discussion

The Defendant seeks dismissal of Plaintiff's claim pursuant to both Rule 12(b) and Rule 12(c). Motions to dismiss under Rule 12 (c) are considered under the same standard used to decide motions to dismiss under Rule 12(b). Independence News, Inc. v. City of Charlotte, 568 F.3d 148, 154 (4th Cir. 2009). When considering a motion to dismiss pursuant to Rule 12(b), the Court is required to accept the allegations in the pleading as true, and draw all reasonable factual inferences in favor of the Plaintiff. The motion can be granted only if Plaintiff has failed to set forth sufficient factual matters to state a plausible claim for relief "on its face". Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009); see also Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007).

After careful review and consideration of the arguments presented pursuant to this standard, for the reasons set forth hereinbelow the undersigned finds and concludes that the Defendant's motion should be **granted**.

### I.

### (Breach of Contract Claim)

Plaintiff alleges that the Defendant breached its employment contract with him when it wrongfully terminated him for discriminatory reasons. Defendant asserts that in South Carolina employees are presumed to be at-will, and that Plaintiff's breach of contract cause of action is

---

[2] Although Plaintiff references these two federal civil rights statutes in his Complaint, the only cause of action he is asserting is a state law claim for wrongful termination/breach of contract.

3



therefore subject to dismissal because he has failed to plead sufficient facts to establish the existence of an employment contract. The undersigned is constrained to agree.

The necessary elements of a contract are an offer, acceptance, and valuable consideration. Roberts v. Gaskins, 486 S.E.2d 771, 773 (S.C. 1997), citing Carolina Amusement Co., Inc. v. Connecticut Nat'l Life Ins., Co., 437 S.E.2d 122 (S.C. Ct. App. 1993). With respect to employment, however, the Defendant is correct that there is a presumption in South Carolina that employees are at-will, and therefore in order to survive a Rule 12 Motion to Dismiss on a claim for breach of a contract of employment, a Plaintiff must "plead sufficient factual allegations to establish the existence of an employment contract beyond the at-will relationship . . . .". Perrine v. G4S Solutions (USA), Inc., No. 11-1210, 2011 WL 3489947, at * 2 (D.S.C. July 20, 2011)["[T]here is a presumption in South Carolina that employees are at-will, and in order to survive a Rule 12 motion to dismiss on a claim for breach of a contract of employment, a Plaintiff must 'plead sufficient factual allegations to establish the existence of an employment contract beyond the at-will relationship . . . .'"], quoting Amason v. P. K. Management, LLC, No. 10-1752, 2011 WL 1100169, at * 6 (D.S.C. Mar. 23, 2011); see also Prescott v. Farmer's Tel. Co-Op., Inc., 516 S.E.2d 923, 927, n. 8 (S.C. 1999)[In South Carolina, "there is a presumption of at-will employment'].

Here, Plaintiff has only alleged in very general and conclusory terms that he and the Defendant "entered into a valid, binding contract whereby Defendant employed Plaintiff," and that the Defendant violated the terms and conditions of this contract by wrongfully terminating him due to his age and religion. Complaint, ¶ ¶ 16-17. These allegations do not establish a plausible claim "on its face" of the existence of an employment contract. Iqbal, 129 S.Ct. at 1949. Plaintiff has

4



identified no actual contract, has neither referred to nor attached a copy of any such employment contract in or to his Complaint, he has failed to set forth any other factual allegations which might establish the existence of a contract (such as that there was mandatory language in an employee handbook or perhaps oral statements by management sufficient to establish the requirements of a contract), nor has he set forth what any such alleged employment contract provided for or what particular provisions of the contract were allegedly violated.[3]  Frey v. City of Herculaneum, 44 F.3d at 671 ["Complaint must contain facts which state a claim as a matter of law and must not be conclusory"]. Plaintiff has also failed to allege how his at-will status may have been changed, such as through a guaranteed term of employment or other such indices of a contractual agreement. Cf. Wadford v. Hartford Fire Ins. Co., No. 87-2872, 1988 WL 492127 at *5 (D.S.C. 1988) ["A review of the relevant authorities... reveals that a policy or representation must limit the duration of employment or the employer's right to terminate employment in order to alter at-will status. Other terms and conditions of employment, including pay, benefits, job duties, or location of performance may be changed prospectively by either party without violating an employment contract with an indefinite term."]; see also Cape v. Greenville School Dist., 618 S.E.2d 881, 883 (S.C. 2005) [Employee employed for an indefinite period of time, rather than for a stated period of time, is presumptively considered an employee at-will]. Hence, no factual allegations setting forth how an employment contract was or may have been created have been provided. Leeds v. Meltz, 85 F.3d 51, 53 (2d Cir. 1996)["While the pleading standard is a liberal one, bald assertions and conclusions

---

[3]Although it may be presumed that Plaintiff's contention is that the employment contract he alleges exists contains non-discrimination provisions which were violated by the Defendant, he has not set forth any such allegation in his Complaint, nor has he identified or referenced any such particular provisions in any contract.



of law" are not sufficient to avoid dismissal of a complaint for failure to state a proper claim.].

In his response to the Defendant's motion, Plaintiff does not even discuss his contract claim, instead choosing to address his claim as a claim for wrongful termination in violation of the public policy of South Carolina. See Plaintiff's Brief, pp. 3-4. Therefore, the Defendant is entitled to dismissal of this cause of action. Amazon v. PK Management, LLC, 2011 WL 1100169, at * 6 (D.S.C. Mar. 23, 2011); cf. Williams v. Intier Automotive Interiors of America, Inc., No. 09-1144, 2010 WL 5811848 (D.S.C. Nov. 5 2010); see also Harper v. United States, 423 F.Supp. 192, 196 (D.S.C. 1976) ["[W]here the claims in a complaint are insufficiently supported by factual allegations, these claims may be properly dismissed by summary dismissal"]; Perrine, 2011 WL 3563110, at * 2 [In order to survive a Rule 12 motion to dismiss on a claim for breach of a contract of employment, a Plaintiff must "plead sufficient factual allegations to establish the existence of an employment contract beyond the at-will relationship"]; Prescott, 516 S.E.2d at 927, n. 8 [In South Carolina, "there is a presumption of at-will employment"]. See Twombly, 550 U.S. at 555 ["While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, . . . [f]actual allegations must be enough to raise a right to relief above the speculative level"]; House v. New Castle County, 824 F.Supp. 477, 485 (D.Md. 1993) [Plaintiff's conclusory allegations insufficient to maintain claim]; see also Iqbal, 129 S.Ct. at 1949-1950 ["[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions"].

## II.

### (Wrongful Discharge/Public Policy Claim)

As noted, in his brief Plaintiff only addresses his claim as a wrongful termination public policy claim. The Defendant has also in the alternative moved for dismissal of Plaintiff's

6



claim under this theory as well. Specifically, Defendant argues that Plaintiff's wrongful discharge/public policy cause of action should be dismissed because this claim could be asserted under Title VII and/or the Age Discrimination in Employment Act (both of which Plaintiff even references in his Complaint as being the basis for his public policy violation claim), and that Plaintiff does not have a viable cause of action for wrongful discharge in violation of public policy if other potential statutory remedies exists. After careful review of the arguments presented with respect to this cause of action, the undersigned agrees with the Defendant that it is entitled to dismissal of this claim.

In Ludwick v. This Minute of Carolina, Inc., 337 S.E.2d 213 (S.C. 1985), the South Carolina Supreme Court held that a cause of action in tort exists under South Carolina law where a discharge of an at-will employee[4] constitutes a violation of a clear mandate of public policy, such as "when an employer requires an at-will employee, as a condition of retaining employment, to violate the law", and discharges them for failure to do so. Id, at 216. See also Culler v. Blue Ridge Electric Cooperative, Inc., 422 S.E.2d 91 (S.C. 1992). "This exception is generally applied in a situation in which an employer requires an employee to violate a law, or when the reason for the termination is itself a violation of criminal law"; Barron v. Labor Finders of South Carolina, 682 S.E.2d 271, 273 (S.C.Ct. App. 2009); although some other situations may also apply. See Washington v. Purdue Farms, Inc., No. 07-3552, 2009 WL 386926 at * 12 (D.S.C. Feb. 13,

---

[4]Although Plaintiff (at least initially) asserted that he had a contract of employment with the Defendant, and was therefore not an "at will" employee, even assuming arguendo that such a claim could be brought by a contract employee, the undersigned has already found that Plaintiff has failed to plead sufficient facts to establish that he had an employment contract. See Discussion Section I, supra.



7

2009)["Several types of public policies have been deemed appropriate to sustain this cause of action including: requiring an employee to violate the criminal law, where the reason for the employee's termination was itself a violation of criminal law, obeying a subpoena, refusing to contribute money to a political action fund, and invoking rights under Payment of Wages Act."]; see also See Barron, 713 S.E.2d at 637 [noting that there may be cases where a public policy wrongful termination claim could be pursued even where a discharge did not itself violate a criminal law or the employer did not require the employee to violate the law], citing to Garner v. Morrison Knudsen Corp., 456 S.E.2d 907 (S.C. 1995) and Keiger v. Citgo Coastal Petroleum, Inc., 482 S.E.2d 792 (S.C.Ct.App. 1997). Here, however, Plaintiff has failed in the allegations of his Complaint to identify any public policy violation pursuant to this standard.

First, there is no indication in the allegations of Plaintiff's complaint that a violation of a criminal law was involved in this matter. Rather, Plaintiff specifically alleges that his termination was a public policy violation because it was unlawful for his employer to discriminate against him in violation of the previously referenced federal anti-discrimination statutes, as well as the South Carolina Human Affairs Law (SCHAL). See S.C. Code Ann. § 1-13-80. However, even assuming the Defendant *did* deny Plaintiff his rights under these anti-discrimination statutes, as Plaintiff alleges, that is not the commission of a crime. Lawson v. South Carolina Dept. of Corrections, 532 S.E.2d 259, 260-261 (S.C. 2000)[Public policy claim arises where "an employer requires an employee to violate the [criminal] law or the reason for the employee's termination was itself a violation of a criminal law"]; Love v. Cherokee County Veteran's Affairs Office, No. 09-194, 2009 WL 2394369, at * 3 (D.S.C. Jul. 31, 2009)[Granting Rule 12 motion to dismiss where no inference could be drawn from the facts alleged that the Plaintiff's termination was in violation of



a criminal law]; Barron, 682 S.E.2d at 273-274 [No wrongful discharge action where employee was not asked to violate the law and his termination did not violate the criminal law]**;** cf. King v. Charleston County School District, 664 F.Supp.2d 571, 584-585 (D.S.C. May 21, 2009); Merck v. Advanced Drainage System, Inc., 921 F.2d 549, 554 (4th Cir. 1990)[The "public policy" exception to the at-will doctrine "is to be very narrowly applied."].

Further, even in those limited (and as yet undefined[5]) circumstances where the violation of a criminal statute is not involved, the Defendant correctly notes that a Ludwick claim still cannot be asserted where there are federal or state statutory remedies available to vindicate the public policies allegedly implicated by a plaintiff's termination, as the South Carolina Supreme Court has explicitly held that "[w]hen a statute creates a substantive right and provides a remedy for infringement of that right, the Plaintiff is limited to that statutory remedy." Palmer v. House of Blues Myrtle Beach Restaurant Corp., No. 05-3301, 2006 WL 2708278 at *3 (D.S.C. Sept. 20, 2006) (citing Lawson, 532 S.E.2d 259); see Barron, 713 S.E.2d at 637 [noting that, even where an at-will employee might otherwise have a public policy wrongful termination claim even when no criminal violation is involved, "[t]he public policy exception does not . . . extend to situations where the employee has an existing statutory remedy for wrongful termination"]. Here, Plaintiff has or had a potential statutory remedy for his alleged wrongful termination claim under Title VII, the ADEA, as well as under state law pursuant to the South Carolina Human Affairs Law (SCHAL). See Jefferson v. Chestnut Group, Inc., No. 08-3728, 2009 WL 302312 at * 2 (D.S.C. Feb. 6, 2009)[Dismissing state public policy claim where Plaintiff clearly had a potential remedy under

---

[5]See Barron, 713 S.E.2d at 637-638.

9



South Carolina Human Affairs Law and Title VII]; see also Stiles v. Am. Gen. Life Ins. Co., 516 S.E.2d 449, 452 (S.C. 1999) ["[T]he Ludwick exception is not designed to overlap an employee's statutory or contractual rights to challenge a discharge, but rather to provide a remedy for a clear violation of public policy where no other reasonable means of redress exists."]; Palmer, 2006 WL 2708278, at * 3 [[t]he public policy exception does not . . . extend to situations where the employee has an existing statutory remedy for wrongful termination"].

In sum, as Plaintiff has or had a statutory remedy or remedies for his wrongful termination claim, he may not pursue a separate state law public policy/wrongful termination cause of action. Palmer, 2006 WL 2708278, at * * 3 and 5; Ramsey v. Vanguard Servs, Inc., No. 07-265, 2007 WL 904526 at *1 (D.S.C. Mar. 22, 2007); Dockins v. Ingles Markets, Inc., 413 S.E.2d 18, 19 (S.C. 1992); see Merck, 921 F.2d at 554 [The "public policy" exception to the at-will doctrine "is to be very narrowly applied."]. The Defendant is therefore entitled to dismissal of this cause of action. Zeigler v. Guidant Corp., No. 07-3448, 2008 WL 2001943 at * 2 (D.S.C. May 6, 2008) ["The Ludwick exception to at-will employment is not designed to overlap an employee's statutory rights to challenge a discharge, but rather to provide a remedy for a clear violation of public policy where no other reasonable means of redress exists."] (quoting Stiles, 516 S.E.2d at 452); Heyward v. Monroe, No. 97-2430, 1998 WL 841494, at * 4 (4th Cir. Dec. 7, 1998)[Finding that Plaintiff's public policy termination claim was appropriately dismissed: "South Carolina permits an action under the public policy exception when an at-will employee is terminated for refusing to violate the law. It has not been extended to circumstances where there is a statutory remedy for employment discrimination, as in this case"].



### III.

### (Request to be Allowed to Amend)

In his response brief, Plaintiff also asks that, in the event it is determined that Plaintiff's Complaint as written is subject to dismissal, he be allowed to file an amended complaint. Rule 15, Fed.R.Civ.P., provides that leave to amend should be freely given when justice so requires. In this case, however, the undersigned is constrained to note that this case has been pending since September 2014, and that pursuant to the Scheduling Order entered in this case motions to amend pleadings were due by November 3, 2014. Plaintiff has never filed a motion to amend his Complaint, he has not provided a proposed amended complaint for the Court's (or the Defendant's) consideration and review, nor has he indicated in his response brief what new claims or allegations might be contained in an amended complaint. Therefore, there is nothing before the Court on which the undersigned could make a recommendation with respect to whether Plaintiff should be allowed to amend his Complaint.

If Plaintiff wishes to pursue this alternative avenue for relief, he should submit a proposed amended complaint to the Court as an attachment to any objections he may file to this Report and Recommendation. In the event the District Judge accepts the recommendation contained herein with respect to Plaintiff's current claims, then it would be up to him whether to allow Plaintiff to amend his Complaint, but at least he would have a proposed amended complaint to review for purposes of making this decision.

### Conclusion

Based on the foregoing, it is recommended that the Defendant's motion to dismiss Plaintiff's current claim(s) be **granted**. If the Court adopts this Recommendation, but then allows



Plaintiff to file an amended complaint, the case can then be returned to the undersigned for issuance of a new scheduling order. If, however, Plaintiff is not allowed to file an amended complaint, then this case should be **dismissed** for the reasons stated.

        The parties are referred to the Notice Page attached hereto.

_____
Bristow Marchant
United States Magistrate Judge

January 13, 2015
Charleston, South Carolina



12

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge.  Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections.  "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'"  *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d).  Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

> Robin L. Blume, Clerk
> United States District Court
> Post Office Box 835
> Charleston, South Carolina 29402

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.**  28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).

13

